# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| DANIEL C. AGUILAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:18-cv-393-HAB |
| | ) |
| DEPARTMENT OF VETERANS AFFAIRS, AGENCY, | ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (ECF No. 12). For the reasons set forth below, Plaintiff's Complaint for Damages will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim under Title VII of the Civil Rights Act of 1964 and Section 501 of the Rehabilitation Act of 1973.

## FACTUAL BACKGROUND

The facts of this case, as alleged in Plaintiff's Complaint for Damages (ECF No. 3), are as follows. During the relevant time, Plaintiff was a canteen worker at the Department of Federal Affairs Canteen Services facility in Marion, Indiana. Starting on February 20, 2014, Plaintiff was granted four hundred and twenty hours of FMLA leave and began taking intermittent leaves of absence from work. Sometime in July of 2014, Plaintiff called to request leave and Defendant's management official responded, "what's wrong with you." From July 2014, through September 2014, Plaintiff took an extended period of continuous FLMA leave. By August 19, 2014, Plaintiff had exhausted his allotted FLMA leave.

On August 8, 2014, Defendant's Human Resource Specialist sent an email to the canteen chief at the Marion facility stating that Plaintiff had called and left a voice mail indicating that he

wanted to resign. On October 3, 2014, the canteen chief sent a Return of Duty Letter to Plaintiff seeking clarification of Plaintiff's employment status and requesting that Plaintiff return to work immediately. Also on October 3, 2014, Plaintiff's union representative emailed the canteen chief to ask about Plaintiff's employment status and to communicate Plaintiff's desire to return to work. Defendant responded on March 3, 2015, by sending a letter to Plaintiff formally documenting Plaintiff's resignation and providing him with options for post-employment benefits.

## PROCEDURAL BACKGROUND

On January 25, 2016, Plaintiff filed his formal complaint of discrimination with Defendant alleging he was subjected to harassment and a hostile work environment based on his disability and in reprisal for prior EEO activity. Defendant issued its Final Agency Decision on December 16, 2016. Plaintiff appealed the Final Agency Decision to the EEOC. However, on July 6, 2017, and before the EEOC issued its decision, Plaintiff filed a complaint in this Court under Cause No. 1:17-cv-280. Plaintiff moved to dismiss that cause without prejudice on January 22, 2016 (Cause No. 1:17-cv-280, ECF No. 25). In relevant part, Plaintiff's Motion to Dismiss Without Prejudice states that Plaintiff is seeking dismissal "in that he has not finalized the administrative process with defendant and . . . [t]he parties [sic] counsel have discussed said dismissal and Defendant has no objection." (*Id.*). Plaintiff's motion was granted on January 23, 2018.

The EEOC rendered its Decision on July 26, 2018, affirming the Final Agency Decision's determination that there was no discrimination. Thereafter, on October 9, 2018, Plaintiff filed his Complaint for Damages in the Grant County, Indiana, Circuit Court. (ECF No. 3). Defendant removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1). (ECF No. 1). Defendant filed its Motion to Dismiss (ECF No. 12) and Memorandum in Support (ECF No. 13) on February 4,

2019. Plaintiff filed his Response (ECF No. 14) on March 4, 2019. This matter is now ripe for review by the Court.

**LEGAL ANALYSIS**

A. *Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Defendant first asserts that this Court lacks subject matter jurisdiction over Plaintiff's claim. Defendant argues that the Grant Circuit Court lacked jurisdiction over the claim, and therefore this Court also lacks jurisdiction under the derivative jurisdiction doctrine. As set forth below, this Court concludes that the Grant Circuit Court did have jurisdiction over the claim. However, even if the Grant Circuit Court lacked jurisdiction, that would not create a jurisdictional bar here. Accordingly, this Court concludes that Defendant's subject matter jurisdiction argument should be rejected.

1. *Legal Standard*

Fed. R. Civ. P. 12(b)(1) provides that a case will be dismissed if the court lacks the statutory authority to hear and decide the dispute. The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If subject matter jurisdiction is not evident from the face of the complaint, a court must analyze the motion like any other motion to dismiss and assume for purposes of the motion that the allegations in the complaint are true. Where, as here, the complaint is formally sufficient, but the contention is that there is no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion. The burden of proof on the Rule 12(b)(1) issue is on the party asserting jurisdiction. *Id*.

2. *Concurrent Jurisdiction over Title VII Claims*

The enforcement provision of Title VII provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3). In *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990), a unanimous Supreme Court interpreted this provision as providing for concurrent jurisdiction between state and federal courts over Title VII actions. Defendant acknowledges *Yellow Freight* but suggests that this Court should find exclusive jurisdiction in the federal courts for Title VII claims against federal employers, relying on *Bullock v. Napolitano*, 666 F.3d 281 (4th Cir. 2012). The Court declines Defendant's suggestion.

The issue on which the courts in *Yellow Freight* and *Bullock* diverge is how to interpret Congress' omission of any reference to state court jurisdiction in 42 U.S.C. § 2000e-5(f)(3). The Supreme Court in *Yellow Freight* determined that principles of federalism mandated a finding of concurrent jurisdiction unless Congress explicitly provided otherwise.

> Under our system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction.

*Yellow Freight*, 494 U.S. at 823 (citations omitted). Accordingly, the Supreme Court found that the lack of reference to state court jurisdiction was "strong, and arguably sufficient, evidence that Congress" did not intend exclusive federal jurisdiction. *Id*. Although the Court noted that the legislative history was "persuasive" in showing an anticipation by Congress that Title VII cases would be handled by federal courts, the Court concluded that "such anticipation does not overcome the presumption of concurrent jurisdiction that lies at the core of our federal system." *Id*. at 826.

4

The Fourth Circuit took a conflicting position regarding the effect of Congressional silence in *Bullock*. While *Yellow Freight* concentrated on Congress' ability to divest state courts of jurisdiction, *Bullock* focused on the sovereign's ability to confer jurisdiction via its waiver of sovereign immunity. As stated by the *Bullock* court:

> Sovereign immunity is "jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and "the terms of [a sovereign's] consent to be sued *in any court* define that court's jurisdiction to entertain the suit," *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (emphasis added). Sovereign immunity is not only a bar to liability but also a bar to the courts in which suits against the United States can be filed, *see id*. at 588–91, and to the remedies claimed, *see Shaw*, 478 U.S. at 314–21. Any statutory waiver of sovereign immunity can thus condition or limit the waiver. *See Sherwood*, 312 U.S. at 587.

*Bullock*, 666 F.3d at 284 (parallel citations omitted). Thus, according to the Fourth Circuit, § 2000e-5(f)(3) requires a different interpretation where, as in *Bullock*, the defendant employer is the federal government. Noting this distinguishing factor, the Fourth Circuit stated that,

> while suits against private corporations, which do not have sovereign immunity, can be justified by the presumption of concurrent state jurisdiction, a suit against the United States can only rely on an unequivocal waiver contained in a statutory provision. A statute's "complete silence" on the subject is insufficient.

*Id*. at 285. With the "unequivocal waiver" missing from § 2000e-5(f)(3), the Fourth Circuit held that state courts lack subject matter jurisdiction over Title VII claims against federal employers. *Id*. at 286.

Unlike *Yellow Freight*, *Bullock* was not a unanimous opinion. Instead, Judge Gregory issued a lengthy dissent relying, in large part, on *Yellow Freight*. According to the dissent, it was important to understand the statutory framework under which a federal employee brings a Title VII action. The right of a federal employee to bring a Title VII action is found in 42 U.S.C. § 2000e-16. There, Congress provided that a federal employee "aggrieved by the final disposition of his complaint . . . may file a civil action as provided in section 2000e-5 of this title, in which

5

civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). Furthermore, "[t]he provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties." 42 U.S.C. § 2000e-16(d). Thus, as noted by the dissent, § 2000e-16 "provides that a federal employee may file a civil action *in the same manner* as private sector employees." *Bullock*, 666 F.3d at 288 (original emphasis). With the procedure the same, the dissent concluded that *Yellow Freight* must control.

> While *Yellow Freight* involved a Title VII action against a private employer, and the majority understandably seeks to distinguish the decision on that ground, the jurisdictional provision it points to today as allegedly providing exclusive federal court jurisdiction to adjudicate claims against a federal employer is the very same jurisdictional provision the unanimous Court construed in *Yellow Freight* to conclude that Congress did not limit jurisdiction to federal courts; that is, § 2000e–5(f)(3). It cannot be that the same provision has one meaning for private sector employees and another for federal employees where Congress expressly waived sovereign immunity and provided that a federal employee may file a civil action *in the same manner* as private sector employees.

*Id*. at 287 (original emphasis).

This Court finds the dissent in *Bullock* to have the more compelling argument. As the dissent points out, case law requiring the "unequivocal waiver" of sovereign immunity has never required the amount of specificity the Fourth Circuit would require under *Bullock*. *Id*. at 288. Instead, the cases cited by *Bullock* all address the waiver of what kind of claim can be brought, not where the claim can be brought.[1] Where Congress has desired exclusive federal jurisdiction, it has expressly provided for it. *See, e.g.*, 28 U.S.C. § 1346(b) (the Federal Tort Claims Act); *see also Taffin v. Levitt*, 493 U.S. 455, 471 (1990) (Scalia, J., concurring) (compiling statutes).

---

[1] *See Library of Cong. v. Shaw*, 478 U.S. 310 (1986) (whether Congress had consented to the recovery of interest); *Lane v. Pena*, 518 U.S. 187 (1996) (whether Congress had consented to the recovery of monetary damages); *United States v. Sherwood*, 312 U.S. 584 (1941) (amounts of damages in U.S. district courts and the Court of Claims).

6

In addition, this Court would note that courts have generally refused to make a distinction between private sector and federal employees in interpreting the scope of Title VII. *See West v. Gibson*, 527 U.S. 212 (1999) (compensatory damages available to federal employees); *Rodriguez v. United States*, 852 F.3d 67 (1st Cir. 2017) (safe harbor provision of §2000e-2(h) applies to federal employers); *Forest v. U.S. Postal Serv.*, 97 F.3d 137 (6th Cir. 1996) (90-day limitations period applied to federal employee); *Roy v. Runyon*, 954 F. Supp. 368 (D. Me. 1997) (punitive damages available to federal employees notwithstanding sovereign immunity). Nothing in the language or reasoning of *Yellow Freight* indicates that the decision is intended to apply only to private sector employees. Accordingly, this Court sees no reason to part with the long-held judicial refusal to distinguish between classes of employees in the manner the Fourth Circuit has done.

Moreover, this Court believes that the Fourth Circuit has applied the "unequivocal waiver" canon too broadly. On this point, *Gomez-Perez v. Potter*, 553 U.S. 474 (2008), is instructive. There, the Supreme Court was tasked with determining whether the ADEA prohibits retaliation against a federal employee who complains of age discrimination. As it did here, the Government stated that its waiver of sovereign immunity must be "construed strictly," and since retaliation was not specifically listed among the acts giving rise to a claim the Government had not unequivocally waived its sovereign immunity against such claims. *Id*. at 490–91. The Supreme Court rejected the Government's position, noting that only the waiver need be strictly construed, not the statute as a whole.

> Respondent is of course correct that a waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will be strictly construed, in terms of its scope, in favor of the sovereign. But this rule of construction is satisfied here. Subsection (c) of § 633a unequivocally waives sovereign immunity for a claim brought by "[a]ny person aggrieved" to remedy a violation of § 633a. Unlike § 633a(c), § 633a(a) is not a waiver of sovereign immunity; it is a substantive provision outlawing "discrimination." That the waiver

7

in § 633a(c)[2] applies to § 633a(a) claims does not mean that § 633a(a) must surmount the same high hurdle as § 633a(c).

*Id*. at 491 (citations omitted). Thus, in determining the scope of the sovereign immunity waiver, one must first identify that waiver.

For Title VII, the waiver provision is 42 U.S.C. § 2000e-16(c). As noted above, that section provides that a federal employee "aggrieved by the final disposition of his complaint . . . may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." This waiver states what kind of action can be brought (appeals of a final disposition), against whom (the head of the department, agency, or unit), and how (as provided in section 2000e-5). To paraphrase *Gomez-Perez*, that § 2000e-16 references § 2000e-5 does not mean that § 2000e-5 must surmount the same high hurdle as § 2000e-16. The language of § 2000e-16(c), coupled with *Yellow Freight*, is sufficient for this Court to conclude that Congress intended for federal employees to bring an action in the same manner, and in the same jurisdictions, as private sector employees.

While courts must strictly construe waivers of sovereign immunity, they "must also be careful not to assume the authority to narrow the waiver that Congress intended or to construe the waiver unduly restrictively." *Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89, 94 (1990). As set forth above, this Court determines that the Fourth Circuit incorrectly assumed that authority. This Court concludes that the Grant Circuit Court had jurisdiction over Plaintiff's claims, and that Defendant's derivative jurisdiction claim must fail.

---

[2] 29 U.S.C. § 633a(c) states, "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."

3.  *Derivative Jurisdiction in the Seventh Circuit*

Even if this Court were to agree with the Fourth Circuit on the question of concurrent jurisdiction, it would nonetheless diverge from that court on the issue of whether exclusive federal jurisdiction required dismissal. That is because, to the extent the doctrine of derivative jurisdiction still exists in this Circuit, it survives in only the most academic sense.

The relevant authority is Judge Flaum's decision in *Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011). There, the Seventh Circuit was faced with the question of whether the derivative jurisdiction doctrine was a matter of subject matter jurisdiction, or whether it constitutes a "mere defect in the process by which a case reaches federal court." *Id*. at 621. After an extensive review of the authorities, the court found the latter.

> The argument that the doctrine of derivative jurisdiction strikes at the heart of subject matter jurisdiction suffers from numerous flaws. At the outset, the textual allure of the jurisdictional argument is not so strong as it at first appears. While the doctrine says federal jurisdiction is derived from state courts, it in the same breath delivers its caveat that this is true only in a limited sense. Moreover, the doctrine is expressly concerned with the acquisition of jurisdiction upon removal—If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none. The acquisition of jurisdiction upon removal speaks to so-called "removal jurisdiction," not to the distinct concept of federal subject matter jurisdiction. Indeed, the modern instinct is to eschew the term removal jurisdiction, because removal is not a kind of jurisdiction—analogous to federal question jurisdiction and diversity of citizenship jurisdiction. Rather it is a means of bringing cases within federal courts' original jurisdiction into those courts.

*Id*. at 622–23 (citations omitted). This distinction is critical, the court held, because "subject matter jurisdiction is unyielding, and the earliest cases confirm that the doctrine of derivative jurisdiction is not." *Id*. at 623 (citations omitted). Stated another way, derivative jurisdiction can be waived by the parties, while subject matter jurisdiction may not.

For our purposes, the most important part of *Rodas* is the instructions to the district court on remand. The court instructed the district court to exercise jurisdiction over the matter, the lack

9

of derivative jurisdiction notwithstanding. The court noted that subject matter jurisdiction over the case would have been proper had the matter been filed in the district court initially. *Id*. at 629. The court further noted that, relying on *People of State of Ill. Ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939 (7th Cir. 1983), any defect in derivative jurisdiction can be cured by the filing of an amended complaint in the district court. *Rodas*, 656 F.3d at 629. As the Seventh Circuit stated in *Barra*, "[i]f that [amended] complaint properly invoked the jurisdiction of the federal court it is immaterial that the original complaint may not have stated a removable claim." *Barra*, 704 F.2d at 939.

Given the decision in *Rodas*, this Court cannot conceive of a situation where derivative jurisdiction would necessitate dismissal of Plaintiff's case with prejudice. Initially, the Court concludes that the procedural error in removal was created by the Government. When this matter was filed in the Grant Circuit Court, the Government had two options. The first option was to move to dismiss the case there for lack of subject matter jurisdiction, presenting the same *Bullock*-based argument it presented here. If it were successful, the dismissal would have been without prejudice, and would have carried no preclusive effect. *Stocker v. Cataldi*, 521 N.E.2d 716 (Ind. Ct. App. 1988). The second option was to do what it did: manufacture error by invoking removal under 28 U.S.C. § 1442(a)(1) and seek dismissal with prejudice under the derivative jurisdiction doctrine. This Court does not believe that the Government, having voluntarily brought the case to this Court, should be heard to object to the power of this Court to render judgment. *See Baggs v. Martin*, 179 U.S. 206, 208–09 (1900).

Perhaps more importantly, because derivative jurisdiction does not raise the question of subject matter jurisdiction, it cannot be ruled upon under Fed. R. Civ. P. 12(b)(1). Instead, at best, the doctrine can only be addressed under Rule 12(b)(6). Of course, dismissal under that Rule

carries with it a presumed right to amend (*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)) which, as set forth in *Barra*, corrects the procedural defect in any event. Accordingly, derivative jurisdiction is, at best, a point-in-time issue, not a fatal flaw in a plaintiff's case. For these reasons, this Court denies Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1).

**B.** ***Defendant's Motion to Dismiss for Failure to Exhaust Administrative Remedies***

Defendant next argues that Plaintiff's initial Complaint on July 6, 2017, short-circuited the EEOC process, and therefore Plaintiff has failed to exhaust his administrative remedies. The Court finds that neither the law nor the procedural history of this case supports the Defendant's argument, and therefore Defendant's motion on this basis is denied.

1. *Legal Standard*

As Defendant notes, failure to exhaust claims are evaluated under Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a claim must be dismissed when the plaintiff has failed to state a claim upon which relief can be granted. "Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted since, in ruling on a motion to dismiss pursuant to Rule 12(b)(6) as well as Rule 12(b)(1), the court must construe the complaint's allegations in the light most favorable to the plaintiff." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Under a Rule 12(b)(6) standard, the court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The court asks, "whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which it rests." *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). To prevail, the defendant "must demonstrate that the plaintiff's

claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Nevertheless, the complaint "must allege facts sufficiently setting forth the essential elements of the cause of action." *Gray v. Cty. Of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

2. *Plaintiff has Exhausted his Administrative Remedies*

Defendant relies on *Williams v. Potter*, 2008 WL 4449549 (N.D. Ind. 2008). In *Williams*, as here, the plaintiff initiated a federal lawsuit before the EEOC had completed its review of the final agency determination and prior to the 180-day time period for the EEOC to render its decision. Unlike the case at bar, the plaintiff in *Williams* also withdrew his EEOC appeal, resulting in the EEOC terminating its review of the appeal without rendering a decision on the merits. *Id.* at *1. After reviewing the applicable statutes and authorities, the court held that the plaintiff "failed to wait the statutorily prescribed time period between filing her appeal and filing her federal claim," and therefore did not exhaust her administrative remedies. *Id.* at *5. As a result, the claim was dismissed without prejudice under Fed. R. Civ. P. 12(b)(6).

The obvious distinction between *Williams* and the case at bar is the fact that, unlike in *Williams*, there is an EEOC decision from which Plaintiff appeals. Noting this distinction, Defendant points this Court to 29 C.F.R. § 1614.409 which provides,

> Filing a civil action under § 1614.407 or § 1614.408 shall terminate Commission processing of the appeal. If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing.

The effect of this regulation, according to Defendant, is that "the EEOC had no authority to issue its Decision," and therefore "Plaintiff is attempting to proceed in district court without having received a final decision by the EEOC."

Because, as a matter of existential fact, there is a final EEOC decision in this case, Defendant must necessarily be arguing that § 1614.409 rendered the EEOC's decision a legal nullity. Defendant cites no authority for this position, and the Court finds the authorities to be conflicting. In support of Defendant's position is *Tolbert v. United States*, 916 F.2d 245 (5th Cir. 1990). Taking a "strict construction of the Title VII exhaustion requirement," the Fifth Circuit concluded that filing a federal action prior to the issuance of the EEOC decision, or the 180-day decision period, was a failure to exhaust administrative remedies and deprived the district court of jurisdiction. *Id*. at 249. On the other side of the argument is *Brown v. Snow*, 440 F.3d 1259 (11th Cir. 2006), a case disclosed to the Court by Defendant. There, the Eleventh Circuit held that the proper way to evaluate a failure to exhaust administrative remedies was to "discern from the record whether the complainant participated in the administrative process in good faith." *Id*. at 1264. Finding that the complainant did so participate, the court concluded that the "early filing did not prevent the EEOC from investigating his complaint for the full 180 days." *Id*. Accordingly, the court affirmed the district court's refusal to dismiss the complaint.

The Court concludes that Seventh Circuit authority more closely follows the logic of *Brown*. The Seventh Circuit examined the consequences of a premature filing in *Hill v. Potter*, 352 F.3d 1142 (7th Cir. 2003). The court first noted that Title VII does not authorize filing a complaint until the plaintiff has exhausted his administrative remedies. However, the court concluded that premature filing does not doom a claim.

> If, however, through ignorance of proper procedures a plaintiff jumps the gun, suing before he has exhausted his administrative remedies, it does not follow that his suit must be dismissed with prejudice, which would preclude its reinstatement. It can be dismissed as premature, at least if the opposing party has not been harmed by the premature filing of the suit, and hence without prejudice. The point would be obvious if, promptly waking up to his failure to exhaust, a plaintiff voluntarily moved to dismiss his case.

13

*Id*. at 1145–46. This appears to be precisely what happened here. While the record does not reflect why Plaintiff "jumped the gun," it does appear that Defendant was not harmed by the premature filing; after all, Defendant consented to dismissal without prejudice. (Cause No. 1:17-cv-280, ECF No. 25). The dismissal of Plaintiff's prior claim was on his own voluntary motion. (*Id*.). This case, then, falls squarely into the hypothetical envisioned by *Hill*, making the outcome of Defendant's motion "obvious."

While Defendant is correct that none of the foregoing authorities directly address its § 1614.409 argument, this Court believes that *Hill* is sufficiently on point to govern the determination of Defendant's motion. Therefore, this Court denies Defendant's motion to dismiss for failure to exhaust administrative remedies.

C. *Defendant's Motion to Dismiss for Failure to State a Claim*

Finally, Defendant asserts that Plaintiff failed to allege sufficient facts to state a claim.[3] The Court agrees with Defendant on this point. While Plaintiff's Complaint for Damages sets out a number of events related to his use of FMLA leave and his resignation, there are no facts that allege a violation of FMLA or that are relevant to his claims under Title VII or the Rehabilitation Act. The extent of his relevant allegations regarding his claims under Title VII or the Rehabilitation Act is paragraph 4 of his Complaint, where he notes that he filed a discrimination complaint for "harassment and a hostile work environment based on his disability and in reprisal of prior EEOC activity." (ECF No. 3 at 1). Other than these conclusory statements, Plaintiff alleges no facts demonstrating either harassment or a hostile work environment, nor does the Complaint identify the facts necessary to establish that he has a disability which would entitle him to the protections of the Rehabilitation Act. Accordingly, this Court determines that Plaintiff has failed to allege facts

---

[3] Since this basis for dismissal will also be reviewed under Rule 12(b)(6), the legal standard set forth in Section B.1. above applies here as well.

necessary to set forth the elements of his claims and has failed to state a claim upon which relief may be granted.

The Court also notes that Plaintiff has failed to name the proper party defendant. Title VII requires that, in all cases brought by federal employees, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). The head of the VA, not the VA itself, is the proper party defendant in this case. This is an independent ground to dismiss Plaintiff's claims under Rule 12(b)(6).

Having determined that Plaintiff's Complaint for Damages should be dismissed, the Court also determines that Plaintiff should have the opportunity to amend his complaint. Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss. *Runnion*, 786 F.3d at 519–20. In keeping with this authority, the Court will grant Plaintiff the opportunity to remedy the defects in his Complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED under Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief can be granted. Defendant's Motion is DENIED in all other respects. Plaintiff shall file an amended complaint within fourteen days of this Order.

SO ORDERED on May 29, 2019.

    s/ Holly A. Brady
    JUDGE HOLLY A. BRADY
    UNITED STATES DISTRICT COURT